UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THE TRUSTEES OF THE SOFT DRINK AND
BREWERY WORKERS UNION, LOCAL 812
RETIREMENT FUND,

                               Plaintiffs,

                  -against-

DITMARS DISTRIBUTORS, INC.,

                               Defendant.
------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
20-cv-2317 (DRH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court in this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1399, 1145 and 1451, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, on referral from the Honorable Denis R. Hurley for Report and Recommendation, is Plaintiffs' the Trustees of the Soft Drink and Brewery Workers Union (the "Trustees") and Local 812 Retirement Fund (the "Fund," together with the Trustees, "Plaintiffs") Motion for Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Notice of Motion for Entry of Default Judgment, DE [10]; Memorandum of Law in Support of Plaintiffs' Motion for Entry of Default Judgment ("Pl. Mem."), DE [13].

       By way of Complaint filed on May 22, 2020, Plaintiffs commenced this action against Ditmars Distributors, Inc. ("Defendant" or "Ditmars"), alleging violations of

1

ERISA, 29 U.S.C. § 1381 *et seq.*, for unpaid withdrawal liability and seeking monetary damages. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. After Defendant failed to appear or otherwise defend, the Clerk of the Court entered default against it on September 9, 2020. *See* DE [9]. On September 23, 2020, Plaintiffs filed the instant motion, which Judge Hurley referred to this Court for a recommendation as to whether Plaintiffs' motion should be granted, and if so, to determine the appropriate remedies. *See* Electronic Order dated September 24, 2020. For the reasons set forth herein, it is respectfully recommended that Plaintiffs' motion be granted in part and denied in part, and they be awarded monetary relief as described below.

## I. BACKGROUND

All relevant facts are taken from the Complaint and assumed true for purposes of resolving this motion. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

The Fund, administered in Great Neck, New York, is an "employee pension benefit plan," an "employee benefit plan" and a "multiemployer plan[]," as those terms are defined by Sections 3(2), 3(3) and 3(7), respectively, of ERISA, and was established pursuant to an Agreement and Declaration of Trust (the "Trust Agreement"). *See* Compl. ¶¶ 3-5; 29 U.S.C. §§ 1002(2), 1002(3), 1002(37).

Plaintiff Trustees administer the Fund, and have been, at all relevant times, the "plan sponsor" of the Fund, as defined by Section 3(16)(B) of ERISA. *See* Compl. ¶ 6; 29 U.S.C. § 1002(16)(B). The Trustees are "fiduciaries" of the Fund under Section 3(21) of ERISA. *See* Compl. ¶ 6; 29 U.S.C. § 1002(21). Ditmars was, at all times

2

material to this action, a New York corporation with its principal place of business at 117-02 15th Avenue, College Point, New York, and is considered an "employer," as that term is defined by Section 3(5) of ERISA. *See* Compl. ¶ 7; 29 U.S.C. § 1002(5).

The Trust Agreement provides, in relevant part, that an Employer is in default on withdrawal liability if, subject to Section 4219.31, any installment is not paid when due, the Fund has notified the Employer of its failure to pay the liability on the date it was due, and the Employer has failed to pay the past-due installment within sixty days after its receipt of the late payment notice. *See* Amendment to the Agreement and Declaration of Trust of the Soft Drink and Brewery Workers Union Local 812 Retirement Fund ("Amended Trust Agreement"), DE [11-3], at 2-3. Further, interest is to be charged on any amount of defaulted withdrawal liability from the date the payment was due to the date it is paid, at an annual rate equal to the prime rate charged by Chase Manhattan Bank, NA on the first day of the calendar quarter preceding the due date of the payment, with interest charged for each succeeding 12-month period that any amount in default remains at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined. *See id.* The Trust Agreement also directs that in the event litigation is commenced to collect unpaid withdrawal liability, the defaulted Employer will be liable for liquidated damages in an amount equal to the greater of: (i) the amount of interest charged on the unpaid balance; or (ii) the maximum legal rate of interest permitted by law on the unpaid amount awarded, as well as attorneys' fees and costs incurred, as awarded by the Court. *See* Amended Trust Agreement at 3; Compl. ¶ 5.

3

On or about January 1, 2018, Ditmars allegedly completely withdrew from the Fund "within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a)," by ceasing all contributions to the Fund. Compl. ¶ 8. As a result of Defendant's withdrawal from the Fund, Ditmars allegedly "incurred withdrawal liability within the meaning of Section 4201 of ERISA, 29 U.S.C. § 1381," in the amount of $295,391.00, based on the Fund's actuarial determination of withdrawal liability pursuant to Section 4213, 29 U.S.C. § 1393. *Id.* ¶¶ 8-9.

On or about May 1, 2018, after determining the amount of Defendant's alleged withdrawal liability, the Fund notified Ditmars by letter, pursuant to Section 4219(b)(1), 29 U.S.C. § 1399(b)(1), that it owed withdrawal liability in the amount of $295,391.00. *See id.* ¶ 10. Plaintiffs further demanded payment in quarterly installments of $6,053.75 each, with the first payment due no later than 60 days after July 1, 2018 and with each subsequent payment due every three months beginning on October 1, 2018 until Ditmars remitted a total of 80 payments. *See id.*

After Defendant failed to make its first payment, the Fund notified Ditmars, by letter dated July 2, 2018, that if it failed to cure its default within 60 days, Defendant would become liable for the entire amount of the unpaid withdrawal liability. *See id.* ¶¶ 11-12. Ditmars failed to cure its default, and the Fund has not received any payment of the outstanding withdrawal liability to date. *See id.* ¶¶ 16-17. Defendant further failed to request review of any matter related to the determination of withdrawal liability, identify any inaccuracy in the determination of unfunded vested benefits in accordance with Section 4219(b)(2) of ERISA, 29 U.S.C.

4

§ 1399(b)(2), or initiate arbitration of the withdrawal liability assessment as permitted by Section 4221(a), 29 U.S.C. § 1401(a). *See id.* ¶¶ 14-15.

Based on the above, Plaintiffs filed their Complaint on May 22, 2020, seeking an award of: (i) the entire withdrawal liability in the amount of $295,391.00; (ii) interest on the unpaid withdrawal liability from the date payment was due through the date payment is made, in an amount determined in accordance with the Trust Agreement; (iii) liquidated damages, in an amount determined in accordance with the Trust Agreement; and (iv) reasonable attorneys' fees and the cost of this action. *See generally* Compl.

Plaintiffs served Ditmars with the Summons and Complaint on August 4, 2020. *See* DE [7]. On September 8, 2020, after the time for Defendant to appear or otherwise defend this action passed, Plaintiffs requested a Certificate of Default, *see* DE [8], and the Clerk of the Court entered default against Ditmars on September 9, 2020. *See* DE [9].

On September 23, 2020, Plaintiffs filed the instant motion, which seeks an award of the entirety of Ditmars' withdrawal liability, accrued interest, liquidated damages, attorneys' fees and costs. *See* Pl. Mem. The motion was referred to this Court for Report and Recommendation on September 24, 2020. *See* September 24, 2020 Order Referring Motion. For the reasons set forth below, the Court respectfully recommends granting the motion in part, denying the motion in part, and awarding damages in the amount of $616,751.51.

5

## II. DEFAULT JUDGMENT STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co.*, 373 F.3d at 246; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation*

6

*adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotations and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

## III. DISCUSSION

The Complaint alleges that Ditmars is liable for its failure to pay withdrawal liability, interest, liquidated damages, attorneys' fees and costs associated with its complete withdrawal from the Fund, pursuant to sections 4201 through 4225 and 4301 of ERISA. *See* Compl. ¶ 1.

As to relief, Plaintiffs specifically demand monetary damages, including: (i) the unpaid withdrawal liability of $295,391.00; (ii) interest accrued thereon as of September 1, 2020 in the amount of $115,204.26, along with the interest that has accrued since at the rate of $145.67 per day through the date of entry of judgment; (iii) liquidated damages in an amount equal to the interest accrued; (iv) attorneys' fees in the amount of $3,050.00; and (v) filing fees and legal costs of $527.31. *See* Pl. Mem at 8; Plaintiffs' Calculation of Accrued Interest on Withdrawal Liability, DE [11-3], at 21; Declaration of Owen M. Rumelt in Support of Plaintiffs' Claims for Attorneys' Fees ("Rumelt Dec."), DE [12]. For the reasons set forth herein, it is respectfully recommended that Plaintiffs' motion be granted in part and denied in part, and that the Trustees be awarded the relief described below.

A. <u>Liability</u>

Initially, Plaintiffs allege that Ditmars is liable under sections 502(g)(2), 4219(c)(5) and 4301(b) of ERISA. If an employer who is required to contribute to a plan withdraws from that plan, the employer becomes subject to withdrawal liability. *See* 29 U.S.C. § 1381(a). An employer "completely withdraws" from a plan by "(1) permanently ceas[ing] to have an obligation to contribute under the plan or (2) permanently ceas[ing] all covered operations under the plan." *See* 29 U.S.C. § 1383(a). The Complaint adequately alleges, and Defendant's default establishes, that Ditmars permanently ceased to have an obligation to contribute under the plan on January 1, 2018, and thereby incurred withdrawal liability. *See* Compl. ¶ 8.

To recover for withdrawal liability from an employer, a plan must notify the employer of the amount of liability, include with the notice a schedule for payment and demand payment in accordance with the included schedule. *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988); *Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 223 (E.D.N.Y. 2009) (citing 29 U.S.C. § 1399). An employer may, within 90 days of receipt of the notice, request review of the withdrawal determination. *See* 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1). Any unresolved dispute concerning the plan's determination of liability must be addressed through arbitration. *See id.* If no arbitration hearing is initiated within the statutorily designated timeframe, then the plan's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. *See* 29 U.S.C. § 1401(b)(1).

No supporting documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration. *See, e.g., Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5, 9-10 (E.D.N.Y. 2001) ("ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability."); *see also Trustees Of Local 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011); *Board. of Trustees of the Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, No. 10-cv-195, 2010 WL 5621275, at *3 (E.D.N.Y. Sept. 17, 2010), *report and recommendation adopted*, No. 10-cv-195, 2011 WL 197588 (E.D.N.Y. Jan. 20, 2011).

Applying the above standards, the Court finds that the Trustees have established Defendant's liability. Notwithstanding that Ditmars's default constitutes "an admission of all well-pleaded allegations against the defaulting party," *see Vermont Teddy Bear Co.*, 373 F.3d at 246; *see also Gesualdi v. Nastasi & Associates, Inc.*, No. 19-cv-2077, 2020 WL 966326, at *1-3 (E.D.N.Y. Feb. 11, 2021), *report and recommendation adopted*, No. 19-cv-2077, 2021 WL 1115606, (E.D.N.Y. Mar. 24, 2021), the Court must "determine whether the [plaintiffs]' allegations establish [the defendant]'s liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Here, the Complaint adequately alleges, and Defendant's default establishes, that Ditmars completely withdrew from the Fund, that it was properly notified of its withdrawal liability and payment obligations and that it did not seek review of the

9

assessment. *See* Compl. ¶¶ 7-17. After Defendant failed to make timely payment of the first installment of its withdrawal liability, the Fund gave it 60 days to cure and warned of the consequences of default. *See id.* at ¶ 12. Ditmars failed to respond or cure. *See id.* at 13. Based on the record provided, the Court finds that the Trustees have sufficiently established Defendant's liability under ERISA for withdrawal liability, and therefore respectfully recommends that Plaintiffs' motion for default judgment be granted.

## B. Damages and Remedies

Once liability is established, the court must ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014). To prove damages, the plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Here, Plaintiffs seek to recover damages in the amount of $529,376.83, plus interest accrued in the amount of $145.67 per day from September 1, 2020 through the date of entry of judgment, inclusive of: (i) the unpaid withdrawal liability of $295,391.00; (ii) interest accrued thereon as of September 1, 2020 in the amount of $115,204.26; (iii) liquidated damages in an amount equal to the interest accrued; (iv)

10

attorneys' fees in the amount of $3,050.00; and (v) filing fees and legal costs of $527.31. *See* Pl. Mem. at 8; Plaintiffs' Calculation of Accrued Interest on Withdrawal Liability.

### 1. Unpaid Withdrawal Liability

Pursuant to ERISA, Section 4201, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381. As demonstrated by the allegations of the Complaint and the Declaration of Susette Stone in Support of Plaintiffs' Motion for Entry of Default Judgment ("Stone Declaration" or "Stone Dec."), the Fund calculated Ditmars's withdrawal liability, in accordance with the provisions of ERISA, to be $295,391.00. *See* Compl. ¶ 9; Stone Dec., DE [11], ¶ 6. Defendant took no action to challenge this assessment. Accordingly, the Court recommends that Plaintiffs be awarded $295,391.00 in damages representing Ditmars's unpaid withdrawal liability.

### 2. Interest

The Trustees also seek interest on the outstanding withdrawal liability. *See generally* Compl.; Plaintiffs' Calculation of Accrued Interest on Withdrawal Liability. ERISA provides that following a successful action to recover unpaid withdrawal liability, courts are permitted to award interest on the amount due, and that such interest "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2); *see also*

11

*Trustees of Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds v. Plus K Constr. Inc.*, No. 20-cv-1643, 2021 WL 1199566, at *6 (S.D.N.Y. Mar. 30, 2021); *Trustees of Local 111 Pension Tr. Fund v Manhattan Ignition Corp.*, No. 19-cv-6888, 2020 WL 9814105, at *3 (E.D.N.Y. Oct. 29, 2020), *report and recommendation adopted as mod sub nom. Trustees of Local 111 Pension Fund v Manhattan Ignition Corp.*, No. 19-cv-6888, 2021 WL 242261 (E.D.N.Y. Jan. 25, 2021); *Broach v. Metro. Exposition Servs., Inc.*, No. 20-cv-0165, 2020 WL 3892509, at *7 (S.D.N.Y. Jul. 10, 2020).

In the ERISA context, interest should be calculated from the date a missed payment first becomes due. *See Mason Tenders Dist. Council Welfare Fund v. Mackroyce Const. Corp.*, No. 96-cv-4693, 1998 WL 193075, at *2-3 (S.D.N.Y. Apr. 22, 1998) (internal citations omitted). Here, the Trust Agreement directs that interest is to be charged on any amount of defaulted withdrawal liability from the date payment was due to the date it is paid at the rate set by the Trustees from time to time, and further provides that contributions that are outstanding for more than 180 days will be charged interest from the date due to the date of payment at the rate of 18 percent per annum. *See* Stone Dec. ¶ 7; Amended Trust Agreement at 2-3.

Based on the calculations set forth in the Stone Declaration and Plaintiffs' Calculation of Accrued Interest on Withdrawal Liability, the Court concludes that an interest rate of 18 percent per year should be applied to Plaintiffs' determination of Ditmars's withdrawal liability determination, beginning from the date payment was due, July 1, 2018, through to the date of this Report and Recommendation.

12

Accordingly, the Court respectfully recommends that the Trustees be awarded prejudgment interest in the amount of $115,204.26 with additional interest to be calculated at a rate of $145.67 per day through the date of a judgment entered in this matter. As September 1, 2020 was 302 days ago, the additional prejudgment interest amounts to $43,992.34, for a total of $159,196.60.[1]

### 3. Liquidated Damages

The Trust Agreement provides that, in the event litigation is commenced to collect unpaid withdrawal liability, Plaintiffs are entitled to liquidated damages in an amount equal to the greater of: (i) the amount of interest accrued on the unpaid balance; or (2) 20 percent of the unpaid balance. *See* Stone Dec. ¶ 8. Plaintiffs seek liquidated damages in an amount equal to the interest accrued.

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Annuity , Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO by*

---

[1] Plaintiffs cite inconsistent dates and figures relating to the calculation of prejudgment interest throughout their filings. *Compare* Default Judgment, DE [10-1] ("[I]nterest accrued on the withdrawal liability owed to the Fund as of September 12, 2020 in the amount of $186,160.89 . . . and additional interest accrued . . . from September 12, 2020 through entry of Judgment in the amount of $185.47 per day") *with* Pl. Mem. at 6 ("[A]s of September 12, 2020, interest in the amount of $115,204.26 has accrued . . .") *and* Pl. Mem. at 8 ("[I]nterest accrued thereon as of September 1, 2020 in the amount of $115,204.26 and which shall continue to accrue at the rate of $145.67 per day through the date of entry of judgment"). Though the dates are also inconsistent as between the Stone Declaration and its attached Calculation of Accrued Interest on Withdrawal Liability, the declaration itself explicitly states that $115,204.26 has accrued as of September 1, 2020, and that interest will continue to accrue through the date of entry of judgment in the amount of $145.67 per day. *See* Stone Dec. ¶ 7. Accordingly, the Court uses that date and those figures in its calculations.

13

*Callahan v. Ne. Indus. Maint., Inc.*, No. 19-CV-4484-ENV-SJB, 2020 WL 6437400, at *9 (E.D.N.Y. Sept. 28, 2020); *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (E.D.N.Y Mar. 12, 2019). Accordingly, the Court recommends that the Trustees be awarded liquidated damages in the amount of $159,196.60.

### 4. Attorneys' Fees

Plaintiffs also seek attorneys' fees in the amount of $3,050.00, based on an hourly rate of five hundred dollars ($500) for the six and one-tenth (6.1) hours of work performed by Owen M. Rumelt ("Rumelt"), a partner at Cary Kane LLP ("Cary Kane"). Rumelt was "the attorney who provided nearly all of the services on this matter." Rumelt Dec. ¶¶ 3, 6.

Section 502(g)(2) of ERISA provides, in relevant part, that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . . ." 29 U.S.C. § 1132(g)(2). "[A]n award of attorney fees and costs is...mandatory under subsection (2), of section 1132(g)." *New York State Teamsters Conf. Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d 127, 135 (2d Cir. 1996); *see also Richardson v. Laws Constr. Corp.*, 557 Fed. App'x 57, 59 (2d Cir. Feb. 13, 2014) (summary order) ("When trustees prevail in an ERISA action for unpaid

14

contributions, 29 U.S.C. § 1132(g)(2)(D) mandates an award of 'reasonable attorney's fees and costs of the action, to be paid by the defendant'").

"In calculating attorney's fees, the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (internal quotations and citations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

"[A] presumptively reasonable [attorney's] fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted); *see also Bergerson v. New York State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). Under the "forum rule" applicable in this Circuit, "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672 (2010) ("[T]he lodestar looks to the prevailing

15

market rates in the relevant community."). Thus, in determining a reasonable hourly rate, the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated. *See Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). Rates should be "current rather than historic hourly rates." *Reiter*, 457 F.3d at 232.

Applying these standards, the Court finds that the hourly rate Cary Kane billed is somewhat higher than current prevailing hourly rates for attorneys with comparable skill, experience and reputation to Rumelt practicing in the Eastern District of New York. *See, e.g. CIT Bank, N.A. v. Mitchell*, No. 17-cv-1969, 2021 WL 54081, at *6 (E.D.N.Y. Jan. 6, 2021) ("Hourly rates in the Eastern District of New York generally range from $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates and $85.00 to $100.00 for paralegals."); *Trustees of Local 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-cv-1809, 2020 WL 7034025, at *12 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020) ("In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, . . . rates ranging from $200 to $300 for senior associates, and $100 to $200 for junior associates, . . . and rates ranging from $70 to $90 per hour for paralegals and legal assistants . . . However, courts have accounted for the relative simplicity of ERISA default cases by consistently approving

16

rates that are closer to the lower end of this range.") (internal quotations and citations omitted).  Therefore, the Court respectfully recommends that Rumelt's rate be reduced to $400 per hour.

The Court further concludes that the total time Rumelt expended on this matter—six and one-tenth hours (6.1)—is reasonable.  *See, e.g. Gesualdi*, 2020 WL 966326, at *2-3 (finding that the approximately thirty-two and six-tenths hours billed in a motion for a default judgment against an employer for unpaid contributions was reasonable); *Trustees of Local 813 Pension Tr. Fund v. Rizzo Envtl. Services Corp.*, No. 19-cv-6622, 2020 WL 7249289, at *9 (E.D.N.Y. Oct. 31, 2020), *report and recommendation adopted*, No. 19-cv-6622, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020) (finding that seventy-seven and three-quarters (77.75) hours billed in an action to recover unpaid contributions and withdrawal liability was reasonable).  Accordingly, the Court respectfully recommends that the Trustees be awarded attorneys' fees in the total amount of two thousand four hundred and forty dollars ($2,440.00).

### 5. Costs and Disbursements

Plaintiffs further seek a total of $527.31 in costs and disbursements, comprised of:  (i) the $400.00 filing fee in this action; and (ii) $127.31 for service of the Summons and Complaint.  *See* Rumelt Dec. ¶ 8.  Section 1132(g)(2)(D) of ERISA permits the Trustees to seek an award of court costs and disbursements in this action, to be paid by Ditmars.  *See* 29 U.S.C. § 1132(g)(2)(D).

In this Circuit, reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable.  *See LeBlanc-Sternberg v. Fletcher*, 143

17

F.3d 748, 763 (2d Cir. 1998). Notwithstanding, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. Jul. 21, 2011)). A party is not entitled to recover costs for which it provides inadequate substantiation. *See Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) (finding that without underlying documentation of itemized expenses, the Court has "no way of confirming" that costs were incurred by counsel); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

As an initial matter, the Court takes judicial notice that the Trustees incurred the $400.00 filing fee in this action. *See* DE [1]; *see also Douyon*, 49 F. Supp. 3d at 352 (taking judicial notice of the filing fee reflected on the docket). Additionally, Plaintiffs submitted an invoice from Demovsky Lawyer Service that sufficiently evidences the $127.31 fee in connection with service of the Summons and Complaint. *See* Rumelt Dec., Ex. E (Aug. 14, 2020 invoice for service of process upon Ditmars), DE [12-2]. Accordingly, the Court recommends that the Trustees be awarded a total of $527.31 for fees and disbursements, including post-judgment interest thereon pursuant to 28 U.S.C. § 1961(a).

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiffs' motion be granted in part and denied in part, and that Plaintiffs be awarded damages in the amount of $616,751.51, inclusive of the following: (i) $295,391.00 in unpaid withdrawal liability; (ii) interest, through the date of this Report and Recommendation, in the amount of $159,196.60; (iii) liquidated damages in the amount of $159,196.60; (iv) attorney's fees in the amount of $2,440.00; and (v) $527.31 in costs.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below. Plaintiffs are directed to serve a copy of it on Defendant via first-class mail and file proof of service by ECF within three days of the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
            June 30, 2021

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge